205 Cal.App.3d 1327 (1988)
253 Cal. Rptr. 161
In re ELIZABETH G., a Person Coming Under the Juvenile Court Law.
PLUMAS COUNTY DEPARTMENT OF SOCIAL SERVICES, Plaintiff and Respondent,
v.
MARGARET G. et al., Defendants and Appellants.
Docket No. C003511.
Court of Appeals of California, Third District.
November 17, 1988.
*1329 COUNSEL
Patricia Watkins and Nancy Marsh, under appointments by the Court of Appeal, for Defendants and Appellants.
Robert Shulman, County Counsel, and Janet A. Hilde, Deputy County Counsel, for Plaintiff and Respondent.
OPINION
SPARKS, J.
Margaret and Daniel G., the natural parents of the minor Elizabeth G., appeal from an order of the juvenile court after a permanency planning review hearing. The order directed that Elizabeth be placed in the home of her aunt and uncle in New Jersey. Margaret contends that the juvenile court failed to make the requisite finding that a return of Elizabeth to the custody of her parents would be detrimental and that in any event the department of social services failed to meet its burden of establishing that her return would create a substantial risk of detriment. Daniel makes a similar claim and argues that the court committed reversible error by violating the mandate of Welfare and Institutions Code section 366.2, subdivision (e). Because we find these contentions to be unpersuasive, we shall affirm.

PROCEDURAL AND FACTUAL BACKGROUND
In September, 1985, an amended petition was filed alleging that Elizabeth, then five years of age, was a dependent child within the meaning of Welfare and Institutions Code section 300, subdivisions (a) and (d) (unless otherwise specified further statutory references are to that code).[1] The petition alleged that: (1) Daniel was unable to provide appropriate care of Elizabeth due to limited intelligence and past inability to adequately care for her; (2) Margaret was incarcerated for suspected violations of Penal Code sections 288 and 288a and an investigation revealed that Elizabeth had been present when her mother was sexually active with other minors and her sister; and (3) Elizabeth had played sexual games with other minors which an investigation indicated may have been instigated by Margaret.
A jurisdictional report indicated that in the previous few years the department of social services had received numerous reports concerning the family from such persons as school officials, sheriff's officers, housing officials, medical personnel, and concerned citizens. The reports generally concerned extraordinarily filthy living conditions and instances of child *1330 neglect. Daniel's father reported that Daniel is mentally retarded and would be unable to care for the children by himself. Although services were provided to the family, the minors were removed from the home when an investigation disclosed that Margaret had engaged in sexual conduct with Jennifer and other children. On October 10, 1985, after a contested jurisdictional hearing, the court sustained the petition. At the dispositional hearing medical evidence was introduced which indicated that both Elizabeth and Jennifer had been sexually molested and suffered from other untreated medical problems. The court ordered that Elizabeth be placed in foster care and directed appellants to undergo psychological testing and to attend parenting classes and counseling.
Appellants' social worker prepared a report for the six-month review hearing. She reported that appellants had been cooperative in accepting referrals for services, but that they had failed to alleviate the problems. The social worker opined that progress was impeded by appellants' inability or unwillingness to recognize and admit the problems which required removal of Elizabeth from the home. After a contested review hearing the court ordered that Elizabeth remain in foster care.
At the second six-month review hearing the social worker recommended that Elizabeth be placed in a permanency planning program and that adoption or guardianship be considered. In foster care and with continued therapy Elizabeth had made significant improvement in her physical and mental condition. Appellants had cooperated in accepting services and had made improvement in hygiene and housing maintenance. But the social worker added: "Although [appellants] love their children, their inability to have insight into their own emotional and intellectual limitations prevent them from being able to provide a stable, secure, and nurturing home for their daughter. Numerous attempts have been made to provide them with insight into the needs of their children. They are unable to recognize and admit to the problems that caused the removal of their children beyond the obvious physical problems of hygiene and an inadequate home environment. Consequently the risk continues to exist of continued detriment to the minors['] emotional, intellectual, and possible physical well being, were she to be returned to the home."
After a contested hearing the court found that a return to appellants' custody would create a substantial risk of detriment to Elizabeth. The court ordered that the matter be placed in the permanency planning program. The department was ordered to prepare a specific plan for adoption or guardianship.
The department referred Elizabeth to California Adoption Services. Elizabeth was evaluated by two psychologists who both recommended adoption. At the May 1987 review the court authorized the department to *1331 place Elizabeth in a preadoption home when suitable. The matter was to remain in the permanency planning unit with the goal of adoption. The court directed the department to look into the prospect of Elizabeth living with her aunt, Betty Petillo (Margaret's sister), in New Jersey.
The department requested the New Jersey Department of Human Resources to perform a home evaluation of the Petillo family. New Jersey provided a glowing report on the Petillo family and concluded that placement with them would be an excellent choice for Elizabeth. The Petillos were anxious to have Elizabeth live with them and were willing to consider adoption or guardianship. At the November 1987 review the department sought authorization to place Elizabeth with the Petillos. The alternative was adoption. The court approved placement with the Petillos. This appeal followed.

DISCUSSION
The appellants assert that the trial court erred in failing to make a finding that it would be detrimental to Elizabeth to be returned to their custody before approving placement with the Petillos. They further assert that the evidence does not support such a finding. Daniel also asserts that the trial court committed error in earlier review hearings.

I
(1) We first reject Daniel's claims that the trial court committed error in the earlier review hearings. We are constrained by the limits of appellate jurisdiction from addressing the claims of error in those proceedings. The prior orders sought to be challenged here were themselves appealable orders. (Welf. & Inst. Code, § 395.) Appellate jurisdiction to review an appealable order is dependent upon a timely notice of appeal. (Hollister Convalescent Hosp., Inc. v. Rico (1975) 15 Cal.3d 660, 670 [125 Cal. Rptr. 757, 542 P.2d 1349].) The earlier orders have long since become final and cannot be belatedly reviewed now.[2]

II
(2) We also reject the contention that the trial court was required to make a finding that it would be detrimental to return Elizabeth home. Both appellants contend that the juvenile court's failure to make such a finding of *1332 detriment violated the provisions of section 366.2, subdivision (e). This section governs status review hearings prior to the adoption of a permanency plan. It provides in relevant part: "The court shall proceed as follows at the review hearing. The court shall order the return of the minor to the physical custody of his or her parents or guardians unless, by a preponderance of the evidence, it finds that the return of the child would create a substantial risk of detriment to the physical or emotional well-being of the minor. The probation department shall have the burden of establishing that detriment."
The flaw in appellant's argument is that section 366.2, subdivision (e) applies only to status review hearings before the adoption of a permanency plan. When the second status review was conducted in November 1986, the juvenile court expressly found "by a preponderance of the evidence that the return of the minors [Elizabeth and Jennifer] to the parents at this time would create a substantial risk of detriment to the minors." The court adopted a permanency plan. Once the permanency plan with appropriate findings had been adopted the court was not required to make similar findings at every subsequent hearing. Instead, the subsequent review hearings are governed by other statutory provisions.
Pursuant to section 366, subdivision (a) the status of every child in foster care must be reviewed at least every six months until the permanency planning hearing is completed. Subdivision (b) provides: "Subsequent to the permanency planning hearing periodic reviews of each child in foster care shall be conducted pursuant to the requirements of Sections 366.3 and 16503." Section 16503 in turn provides for administrative review which, due to the court proceedings, was not the method utilized here. Section 366.3 provides for periodic court review following a permanency planning hearing. That section provides, in relevant part: "Unless their parental rights have been permanently terminated, the parent or parents of the minor are entitled to receive notice of, and participate in, those hearings. It shall be presumed that continued care is in the interests of the minor, unless the parent or parents prove, by a preponderance of the evidence, that further efforts at reunification are the best alternative for the minor. In those cases, the court may order that further reunification services be provided to the parent or parents for a period not to exceed six months." At the conclusion of the hearing which is at issue on appeal the court found that Elizabeth continues to need the care and protection of the court and that there is a continued need for out-of-home placement. (3) (See fn. 3.) That was an appropriate and sufficient finding under section 366.3.[3]

*1333 III
(4) Finally, we reject appellants' contention that the evidence does not support the court's decision. The order involved in this appeal was the third permanency planning order respecting Elizabeth. At the hearing it was to be presumed that continued care is in Elizabeth's best interest and the burden was on appellants to establish that further efforts at reunification would be the best alternative. (§ 366.3.) Throughout these proceedings the greatest hurdle to reunification has been appellants' inability to recognize and admit the problems that required Elizabeth's removal from their home. At the hearing appellants presented no evidence that would compel the conclusion that the situation had changed. It was clear that it was in Elizabeth's best interest she be placed in a permanent and stable home environment. The alternative to placement with the Petillos was adoption. The department believed that placement with the Petillos was preferable because then Elizabeth would remain within her family, and appellants and Jennifer would retain the opportunity of maintaining contact with Elizabeth. Based upon this showing the trial court's decision was supported by the record.

DISPOSITION
The order appealed from is affirmed.
Evans, Acting P.J., and Marler, J., concurred.
A petition for a rehearing was denied December 13, 1989, and the opinion was modified to read as printed above.
NOTES
[1] A petition was also filed with respect to Elizabeth's older sister, Jennifer C. This appeal does not involve the proceedings with respect to Jennifer.
[2] Not only do we lack jurisdiction to review orders that have long since become final, it would also be impractical to attempt to review the prior orders at this late date. Since those orders were not appealed and are not properly part of this appeal we have no reporter's transcripts from those hearings. We thus have no way of knowing what evidence was produced at the hearings or what oral findings were made by the judge. When the time for direct review has passed it would obviously be inappropriate to permit a litigant to attack a final order or judgment based upon the alleged silence of a minute order. (See People v. Sumstine (1984) 36 Cal.3d 909, 923-924 [206 Cal. Rptr. 707, 687 P.2d 904].)
[3] In his reply brief Daniel asserts that this court should hold section 366.3 to be unconstitutional unless it is limited to situations in which Civil Code section 232 (termination of parental rights) or guardianship proceedings are involved. Daniel fails to identify the theory of constitutional law upon which we could take such action and none readily appears. On appeal points which are not supported by legal argument and citation of authorities may be deemed to have been waived. (See 9 Witkin, Cal. Procedure (3d ed. 1985) Appeal, § 479, pp. 469-470.) Since this assertion is not supported by authorities and argument and because we do not perceive a basis for finding section 366.3 to be unconstitutional we will not address this assertion further.