45 Cal.App.4th 1791 (1996)
In re HASHEM H., a Person Coming Under the Juvenile Court Law.
LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES, Plaintiff and Respondent,
v.
DIANA H., Defendant and Appellant.
Docket Nos. B090874, B094978, B096146.
Court of Appeals of California, Second District, Division Four.
June 3, 1996.
*1793 COUNSEL
Mitchell L. Beckloff, under appointment by the Court of Appeal, for Defendant and Appellant.
De Witt W. Clinton, County Counsel, Joe Ben Hudgens, Principal Deputy County Counsel, Jones, Day, Reavis & Pogue, Elwood Lui, Laura A. Matz and Mary Hartigan for Plaintiff and Respondent.
OPINION
EPSTEIN, J.
In this case we reverse the grant of a guardianship because the trial court summarily and erroneously denied a hearing on the mother's petition under Welfare and Institutions Code section 388. (All statutory references are to this code unless otherwise stated.)

FACTUAL AND PROCEDURAL SUMMARY
Appellant Diana H. is the mother of Hashem H., born November 1, 1984. Appellant and Hashem's father divorced shortly after Hashem was born.
In December 1990, the department of children and family services (DCFS) filed a petition alleging that six-year-old Hashem was a person described by section 300 because his mother demonstrated numerous emotional and mental problems which prevented her from regularly caring for the minor, and that the minor's home was found in a filthy and unsanitary *1794 condition. At the detention hearing, Hashem was released to his father, with monitored visits by appellant. Counseling was ordered for the minor and his parents. The father placed Hashem with family friends, Mr. and Mrs. S., who previously had cared for him for extended periods of time.
In an amended petition, DCFS alleged: "Minor has special and unique problems and parents presently have a lmited [sic] ability to deal with such problems." DCFS records reveal these problems included depression, suicidal notions, and self-destructive behavior. The adjudication hearing was held on the amended petition on February 7, 1991. The court dismissed all of the allegations except the language concerning Hashem's special and unique problems. Hashem was found to be a person described by section 300, subdivisions (b) and (c).
At the March 1991 dispositional hearing, the court made a suitable placement order for Hashem. The court ordered Hashem's parents be provided with family reunification services, and with reasonable visits. Appellant and the minor were ordered to participate in individual therapy and conjoint counseling. According to DCFS reports, appellant was unable to attend counseling on a regular basis during the first six months of reunification services, and her visits with Hashem were sporadic. Hashem was making substantial progress in his therapy. Appellant was still not in compliance with her required therapeutic plan at the 12-month review, and Hashem did not want to have long visits with his mother.
The social worker's report for the first permanency planning hearing recommended that Hashem's caretakers, Mr. and Mrs. S., be given legal guardianship. Mr. and Mrs. S. were given de facto parent status, and the contested permanency planning hearing was continued on several dates until December 8, 1992. The court had before it a report of appellant's psychological evaluation. The examining physician reported: "At the time she was seen by me, there was no evidence of any major mental disorder that would suggest that she was an unfit custodial parent for her own child. She does admit that she is not very neat, however that in my opinion was not a quality that would prevent someone from being a caring, competent custodial parent." There also was a report that appellant had attended 10 individual therapy sessions at Fuller Psychological and Family Services, but had stopped attending when her therapist left that center.
Hashem was ordered to reside with his father under a "home of parent" order. The court found that DCFS had made reasonable efforts to reunify Hashem with appellant and that Hashem could not be returned to her care without putting him at risk of physical or emotional detriment. Hashem's de *1795 facto parents were given reasonable visitation, and DCFS was ordered to provide Hashem and his father with family maintenance services.
Eight months later, on August 8, 1993, Hashem's father returned Hashem to Mr. and Mrs. S., stating that he did not want Hashem to live with him any more. On August 19, 1993, DCFS filed a section 387 supplemental petition alleging that the previous disposition had not been effective in that the minor's father was unwilling to provide the minor with the necessities of life. The social worker again recommended that Mr. and Mrs. S. be given legal guardianship. A detention hearing was held the following day. Hashem was placed with Mr. and Mrs. S, reunification services were ordered for Hashem and his family, and appellant was given reasonable visitation. The following month, the court ordered Hashem's visits with appellant be at the discretion of Hashem's therapist, and ordered conjoint counseling for appellant and Hashem with the agreement of Hashem's therapist.
In February 1994, DCFS filed a report indicating an improvement in appellant's progress: "Presently, upon returning from vacation, CSW made an unannounced home call at the home of minor's mother ... and was very pleasantly surprised to find that the home was freshly painted, grass was growing in the front yard and inside the home was clean and orderly. Further, at this unannounced visit, CSW discovered that Diane was having a meeting with her therapist ... and the appointed monitor for her visits with [Hashem], ... This CSW was truly amazed as she observed the interaction between these individuals and at Diane's presence and mental acuteness. She was very nicely dressed in a tailored manner and mentally clear, concise and humorous. Diane has been seeing her therapist ... on a weekly basis since the last court date and it is obvious to this CSW that great strides have been made as to her mental well being and it further has manifested itself in her outward appearance and in her home." The social worker recommended an increase in monitored visits, then unmonitored visits, and finally weekend overnight visits on recommendation of the therapists.
DCFS submitted a letter from appellant's therapist, in which she found "no evidence that regularly scheduled, unmonitored visitation between [appellant] and her son should not be permitted." The court order of February 2, 1994, gave DCFS discretion to liberalize or restrict appellant's visits in consultation with appellant's and Hashem's therapists and Hashem's attorney.
In May 1994, DCFS reported that Hashem's visits with appellant had been increased, and that he was requesting a 60-day visit with her. DCFS noted that appellant had continued with her weekly therapy during this period, and *1796 that both appellant's and Hashem's therapists stated appellant was ready for overnight unmonitored visits. DCFS recommended approval of the 60-day visit. The court did not adopt the recommendation, and instead implemented a plan of long-term foster care.
The November 1994 DCFS report notes that appellant continued to attend individual and conjoint counseling on a regular basis, with regular overnight, unmonitored visits with Hashem. DCFS recommended that a selection and implementation hearing be set for the appointment of a legal guardian for Hashem. The court set the matter for a contested section 366.26 hearing on February 1, 1995.
On January 23, 1995, appellant filed a section 388 petition to modify based on a change of circumstances. She sought to have Hashem placed with her, or a 60-day visit. She alleged the following in support of the requested change: "Mother has regualary [sic] participated in individual psychotherapy for nearly a year: she has reguarlary [sic] visited the child since placement and since 5-4-94 has visited every weekend until 12-1-94 when the visits became every other weekend; mother holds a full time job; mother is ready, capable and able to provide for the child on a full-time basis." The court denied the petition the following day, without a hearing.
Appellant sought rehearing of the order on January 26, which was denied on January 30. While her petition for rehearing was pending, appellant filed a motion to vacate the contested section 366.26 hearing on the ground that before the court can change the permanent plan from long-term foster care to guardianship, DCFS must first file a petition for modification under section 388. On February 1, the court took appellant's motion to vacate the section 366.26 hearing off calendar, reasoning that a separate section 388 petition was unnecessary under the circumstances. The court then continued the section 366.26 hearing. Appellant appealed from the January 24 order denying her section 388 petition, and the February 1 order taking her motion to vacate off calendar (case No. B090874).
At a pretrial conference on March 15, 1995, the court scheduled a contested selection and implementation hearing, which was continued on two occasions. On July 26, 1995, prior to the section 366.26 hearing, appellant filed a second section 388 petition for modification, alleging in greater detail her participation in individual and conjoint counseling and her therapist's recommendation that she receive custody of Hashem. Attached to the petition was a letter from appellant's therapist describing appellant's progress in therapy and her ability to assume custody of Hashem. The court denied the petition without a hearing. Appellant filed a timely notice of appeal from this order (case No. B094978).
*1797 The section 366.26 hearing was held on August 2 through 4, 1995. The court heard testimony from Hashem, Mr. and Mrs. S., Hashem's therapist, appellant, and appellant's therapist. At the conclusion of the hearing, the court appointed Mr. and Mrs. S. as his guardians, and terminated jurisdiction. Appellant filed a timely appeal from this guardianship order (Case No. B096146). The three cases have been consolidated on appeal.

DISCUSSION

Denial of Hearing on Section 388 Petition
Appellant filed two section 388 petitions, seeking to have Hashem placed with her, or to have the court order a sixty-day visit. Both petitions presented the same change of circumstances  appellant's participation and progress in therapy  and both were denied without hearing. Our review of the court's denial will focus on the second petition, which contained more detailed allegations.
In her first petition, filed January 23, 1995, appellant alleged that she had regularly participated in individual psychotherapy for nearly a year, that she had regularly visited Hashem since placement, that she was holding a full-time job, and that she was ready, capable and able to provide for Hashem on a full-time basis. The court denied the petition without a hearing, noting on its order: "Mere allegation of regular participation in individual psychotherapy does not mean mother has successfully completed any court order for it. In re Baby Boy L. 24 CA 4th 596."
Appellant's second section 388 petition was filed on July 26, 1995, just prior to the section 366.26 hearing. She alleged as changed circumstances: "1. I have regularly and consistently participated in therapy with Dr. Barbara Ammon for over year and half to such a successful degree that Dr. Ammon has recommended in letter attached as Exhibit A and incorporated as reference a return to my custody. 2. I have regularly consistently visited my son since detain [sic] and had visits every weekend since 5-4-94 to 12-1-94 when I got every other weekend and since then have had also overnight during the week. [¶] 3. I have participated in conjoint counseling with my son and Dr. Ammon. [¶] 4. I plan to continue in counseling with Dr. Ammon when [my] son is returned for conjoint and continue to have my son continue in his individual counseling. [¶] 5. I have a job and attend many religious functions. [¶] 6. I am ready, able, willing to provide for my son on a full-time basis and to be a mother to him in every sense of the word. [¶] 7. I also plan to continue in my individual counseling since I feel it has helped tremendously in my relationship with my son."
*1798 Exhibit A, the letter from Dr. Ammon, recommended that Hashem be returned to appellant's custody. Dr. Ammon explained that in therapy, appellant and Hashem have been working on problem solving, communication, and parenting issues, and that they have been able to establish reasonable solutions to various problems which have developed, increasing their ability to handle future difficulties. According to Dr. Ammon, appellant "is able to provide a stable, predictable, secure environment for [Hashem.] There is no reason to believe that she could not or would not provide adequate food, shelter and supervision on a full time basis. The weekend visits have been successful as have the weekly over night visits." Dr. Ammon noted that appellant has a network of supportive friends who have expressed to her their willingness to continue assisting appellant in practical matters such as transportation and home maintenance. Appellant was aware that she would need to reduce the time she spends attending religious functions in order to accommodate Hashem's needs. Finally, Dr. Ammon observed that if appellant regained custody of Hashem, he would need to continue his relationship with Mr. and Mrs. S., perhaps in the form of weekend visitation.
The court denied the petition without a hearing, noting in writing: "No pleaded facts show the successful completion of psychotherapy. See In re Baby Boy L., 24 CA 4th 596. Moreover, Ex A is merely appended, unverified hearsay. It says nothing about whether the mental problems of the mother which resulted in court jurisdiction have even been addressed." It is apparent from the court's notations that it misunderstood the level of proof required in order for a party to be entitled to a hearing on a section 388 petition.
Section 388 provides: "Any parent or other person having an interest in a child who is a dependent child of the juvenile court ... may, upon grounds of change of circumstance or new evidence, petition the court ... for a hearing to change, modify, or set aside any order of court previously made or to terminate the jurisdiction of the court." The petition shall be verified and must contain "[a] concise statement of any change of circumstance or new evidence that requires changing the order." (Cal. Rules of Court, rule 1432(a)(6); § 388.)
(1) "If it appears that the best interests of the child may be promoted by the proposed change of order ..., the court shall order that a hearing be held...." (§ 388.) The petition for modification is "to be liberally construed in favor of granting a hearing to consider the parent's request." (In re Marilyn H. (1993) 5 Cal.4th 295, 309 [19 Cal. Rptr.2d 544, 851 P.2d 826]; Cal. Rules of Court, rule 1432(a).) In fact, "... if the petition presents any *1799 evidence that a hearing would promote the best interests of the child, the court will order the hearing." (In re Heather P. (1989) 209 Cal. App.3d 886, 891 [257 Cal. Rptr. 545], italics added; In re Jasmon O. (1994) 8 Cal.4th 398, 415 [33 Cal. Rptr.2d 85, 878 P.2d 1297].) "The parent need only make a prima facie showing to trigger the right to proceed by way of a full hearing." (In re Marilyn H., supra, 5 Cal.4th at p. 310; In re Jeremy W. (1992) 3 Cal. App.4th 1407, 1414 [5 Cal. Rptr.2d 148].)
(2a) Appellant met this standard. In her July petition, she described a change of circumstance  her continuous participation in individual therapy for more than 18 months which was so successful that her therapist recommended Hashem be returned to her custody. Also alleged were appellant's regular and consistent visitation with her son for more than a year, her participation in conjoint counseling with him, her stable employment and religious affiliation, and her current ability to provide a home for Hashem on a full-time basis. These allegations were supported by a letter from appellant's therapist, which the court refused to consider because it was unverified hearsay. But the letter demonstrated the availability of admissible evidence to support appellant's allegations of changed circumstances. (See In re Brandon C. (1993) 19 Cal. App.4th 1168, 1172-1173 [23 Cal. Rptr.2d 571].) A fair reading of the petition indicates that appellant's mental and emotional problems which led to the removal of Hashem from her home had been successfully resolved through therapy. Appellant's petition made out a prima facie case of changed circumstances.
In denying the section 388 petition without a hearing, the court relied on In re Baby Boy L. (1994) 24 Cal. App.4th 596 [29 Cal. Rptr.2d 654]. In that case, mother did not participate in the proceedings for the first 13 months of the child's dependency. She did not even seek reunification services until the date originally set for the section 366.26 hearing. The court ultimately ordered the mother to participate in drug and alcohol abuse counseling and to submit to drug testing. At the continued section 366.26 hearing three months later, mother's claim of changed circumstances was not made by written petition under section 388, but merely by oral motion. Mother's attorney represented to the court that the mother was participating in drug counseling, and brought letters to that effect from mother's counselor. Counsel also represented that mother's drug tests had all been negative. The department of children's services informed the court that mother had not furnished proof of clean drug tests to the department, and she did not provide such proof to the court, either. The court refused to hold a section 388 hearing.
In affirming that decision, the Court of Appeal explained: "[A]t the eleventh hour and the fifty-ninth minute, [mother] offered a bare scintilla of *1800 proof that she was beginning to rehabilitate. But `[c]hildhood does not wait for the parent to become adequate.' [Citation.] A mere prima facie showing of changing  we hesitate to say, `changed'  circumstances was not enough to require or justify a hearing on return of the child to her after two years." (In re Baby Boy L., supra, 24 Cal. App.4th 596, 610.)
The distinctions between Baby Boy L. and our case are obvious. Appellant made an adequate showing that she could demonstrate at a hearing that she had overcome her problems through conscientious and successful individual and conjoint counseling over a lengthy period of time; that she maintained a consistent relationship with her son, including weekly visitation; and that she filed written section 388 petitions before the date set for the section 366.26 hearing setting out these changed circumstances. This is more than the "bare scintilla of proof" of changing circumstances that the court found insufficient in Baby Boy L. This is an adequate prima facie showing of changed circumstances under section 388, which required the court to hold a hearing. The court's ex parte denial of the petitions denied appellant her due process right to a full and fair hearing on the merits. (See In re Jeremy W., supra, 3 Cal. App.4th at p. 1416.)
DCFS argues that any such error was harmless, since the court heard the testimony of appellant's therapist, Dr. Ammon, at the contested section 366.26 hearing. According to DCFS, "even if appellant's 388 petition adequately alleged grounds for a hearing, appellant was not prejudiced by the trial court's denial of a 388 hearing, since the testimony as to her progress in therapy was admitted as evidence in the 366.26 hearing and thus was available for the judicial officer's consideration in selecting and implementing a permanent plan for Hashem."
(3) This argument ignores the change in focus when a dependency matter shifts from the reunification period to the permanency planning stage. During the reunification period, there is a presumption that the child will be returned to parental custody. Prior to terminating reunification services, the court must make a determination that it would be detrimental to the child to be returned to the parent's custody. Once reunification services are terminated, the focus shifts to the needs of the child for permanency and stability, and the court need not continue to consider reunification at the section 366.26 hearing. In order to revive the reunification issue, the parent must prove changed circumstances pursuant to section 388. (In re Marilyn H., supra, 5 Cal.4th 295, 308-309.)
(2b) In this case, the mother sought to prove changed circumstances before a permanent plan was implemented, but was denied a hearing on her *1801 petition. At the section 366.26 hearing, the court no longer considered reunification with the mother as an option, focusing instead on providing a permanent home for the child. The testimony of appellant's therapist at the section 366.26 hearing therefore was not considered on the question of whether appellant had progressed so far in therapy that Hashem could be returned to her custody. It was limited, instead, to issues regarding visitation. This was not an adequate substitute for a hearing on appellant's section 388 petitions. The court must first afford appellant a fair hearing on her alleged change of circumstances before proceeding to the section 366.26 hearing and disposition. (See In re Jeremy W., supra, 3 Cal. App.4th at p. 1416.)
It is with reluctance that we reverse the orders in this matter, for each delay in reaching a permanent plan "can be a lifetime to a young child." (In re Marilyn H., supra, 5 Cal.4th at p. 310.) The disposition at the section 366.26 hearing was legal guardianship. While this disposition had serious legal implications, fortunately there was no actual change in Hashem's living arrangements. He continued to reside in the home of Mr. and Mrs. S., and appellant continued to have visitation with him. The court is instructed to conduct the required hearings in this matter without delay in order to minimize the disruption to the minor's life.
Because we reverse for failure to set a hearing on the section 388 petitions, we need not reach appellant's other contentions.

DISPOSITION
The orders are reversed and the cause remanded for further proceedings.
Vogel (C.S.), P.J., and Hastings, J., concurred.