Filed 8/27/14  In re B.A. CA4/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA


| | |
|---|---|
| In re B.A., a Person Coming Under the Juvenile Court Law. | D065663 |
| SAN DIEGO COUNTY HEALTH AND HUMAN SERVICES AGENCY, | |
| Plaintiff and Respondent, | (Super. Ct. No. 516361B) |
| v. | |
| G.G. et al., | |
| Defendants and Appellants. | |


APPEALS from orders of the Superior Court of San Diego County, Laura J. Birkmeyer, Judge.  Affirmed.


Christy C. Peterson, under appointment by the Court of Appeal, for Defendant and Appellant G.G.

Patti L. Dikes, under appointment by the Court of Appeal, for Defendant and Appellant D.A.

Thomas E. Montgomery, County Counsel, John E. Philips, Chief Deputy County Counsel, and Caitlin E. Rae, Deputy County Counsel, for Plaintiff and Respondent.

D.A. and G.G. appeal orders summarily denying D.A.'s petition for modification under Welfare and Institutions Code section 388[1] and terminating parental rights to their daughter, B.A., under section 366.26.  They contend the court abused its discretion when it found that D.A.'s section 388 petition (petition) for reunification services did not state a prima facie case and denied a hearing on the petition.  We affirm.

FACTUAL AND PROCEDURAL BACKGROUND

G.G.[2] and D.A. are the parents of B.A., who was born in January 2013.  B.A. tested positive for cocaine at birth and was detained with a foster parent (caregiver) when she was a day old.

B.A.'s mother, D.A., also tested positive for cocaine.  D.A. had started using drugs in 1988 when she was 14 years old.  She was a polysubstance abuser and dealer and was often incarcerated for drug and drug-related crimes.  D.A. lost custody of three older children in 1999, 2002 and 2006, and they were adopted in 2009.  In 2010, D.A. was assessed with cocaine, amphetamine and methamphetamine substance-induced mood and

---

1      All further statutory references are to the Welfare and Institutions Code.

2      On appeal, G.G. raises only the issue whether the court erred in denying the mother's request for a hearing on the merits of her petition.  Therefore, we limit our discussion of the factual and procedural background of this case to the relevant issue on appeal, and omit much of the background information as it pertains to G.G., who had a significant history of substance abuse, mental health issues and incarceration.

psychotic disorder, with extremely impaired thought process and content. She completed a substance abuse treatment program in 2010.

On February 27, 2013, the court sustained the jurisdictional allegations, removed B.A. from the custody of her parents and ordered a plan of family reunification services. That same day, D.A. was arrested on probation violations on felony narcotics convictions. D.A. was incarcerated until April 16, when she was released to KIVA, an inpatient substance abuse treatment program. On May 4, D.A. was discharged from KIVA after she tested positive for cocaine. On May 15, D.A. was arrested on probation violations and incarcerated. Her expected release date is December 2014.

D.A. had one visit with B.A. while she was at KIVA. The caregiver, who supervised the visits, said D.A. was very cute with B.A. as she showed the baby off to people at the facility. After she was incarcerated, D.A. had regular twice-monthly visits with B.A. at the jail. D.A. demonstrated she was learning how to recognize and address B.A.'s needs.

At the six-month review hearing, the court terminated reunification services and set a section 366.26 hearing for January 2014, which was subsequently continued to March 12, 2014.

In its section 366.26 report, the Agency reported that B.A. was a happy, social 11 month old, who was bonded with her caregiver. The caregiver was willing and able to adopt B.A. if parental rights were terminated.

D.A. had two visits a month with B.A. while incarcerated. The social worker observed two of those visits. B.A. screamed when the social worker took her from her

3

caregiver. In the visitation room, D.A. was able to soothe B.A. When B.A. saw her caregiver through the visitation window, B.A. would stop crying and try to reach out for her. D.A. was very loving and patient with B.A. Her care was appropriate. D.A. would hold B.A. close and kiss and hug her. D.A. introduced age-appropriate toys to her daughter during visits.

On February 24, D.A. filed a petition asking the court to modify its prior order terminating reunification services and allow her further opportunity to reunify with her daughter. In support of her petition, D.A. alleged she had made substantial progress addressing her substance abuse problems by completing an 18-hour treatment program while incarcerated. She also stated that she had attended four 12-step meetings and was committed to her sobriety. In addition, D.A. completed every service and program that was available to her, including programs on parenting, job search, anger management and antitheft. D.A. had regular visits with B.A., and demonstrated she could soothe and appropriately care for her. B.A. appeared to enjoy her time with her mother, who was very affectionate with her.

At a hearing on March 4, the court found that the petition did not state a prima facie of changed circumstances. At best, the petition showed that D.A.'s circumstances were slightly changed. Further, D.A. did not make a prima facie showing that delaying permanency would be in B.A.'s best interests in view of D.A.'s continued incarceration and limited visitation, and the bond between B.A. and her caregiver, who had cared for her since birth.

4

On March 12, the court terminated parental rights and designated B.A.'s caregiver as her prospective adoptive parent.

DISCUSSION

I

*The Juvenile Court Did Not Abuse Its Discretion When It Summarily Denied D.A.'s Section 388 Petition*

D.A. and G.G. contend the court erred when it did not hold an evidentiary hearing on her petition. They argue the petition stated a prima facie case that D.A.'s circumstances were changed and a modification of the prior order was in B.A.'s best interests.

Under section 388, a parent, interested person or the dependent child may petition the court to change, modify or set aside a previous order on the grounds of changed circumstances or new evidence. (§ 388, subd. (a).) The petitioner requesting the modification has the burden to show a change of circumstances or new evidence, and that the proposed modification is in the child's best interests. (*In re Jasmon O*. (1994) 8 Cal.4th 398, 415; Cal. Rules of Court, rule 5.570(e).)

"The parent need only make a prima facie showing to trigger the right to proceed by way of a full hearing." (*In re Marilyn H*. (1993) 5 Cal.4th 295, 310; *In re Hashem H*. (1996) 45 Cal.App.4th 1791, 1798-1799; Cal. Rules of Court, rule 5.570(a).) "The prima facie requirement is not met unless the facts alleged, if supported by evidence given credit at the hearing, would sustain a favorable decision on the petition." (*In re Zachary G*. (1999) 77 Cal.App.4th 799, 806 (*Zachary G*.).) The court must liberally construe the

5

petition in favor of its sufficiency. (*In re Marilyn H.*, at p. 309.) However, when determining whether the petition makes the necessary showing, the court may consider the entire factual and procedural history of the case. (*In re Justice P.* (2004) 123 Cal.App.4th 181, 188-189.)

We review a denial of a hearing on a modification petition for abuse of discretion. (*Zachary G., supra,* 77 Cal.App.4th at p. 808.)

The court reasonably determined the petition did not state a prima facie case to show D.A. had successfully addressed her problems to the degree necessary to be able to provide a safe and stable home for her daughter within the statutory time limits. D.A. is to be incarcerated until December 2014. When released, she would still need to demonstrate her sobriety and stability. B.A. would be two years old in January 2015. She had never lived with D.A., and had developed a strong bond with her caregiver. D.A. had a 26-year substance abuse problem. She only recently began a 12-step program. D.A. had an extensive history of crime for possession of narcotics, resulting in repeated incarceration. When released, she was unable to complete court-ordered substance abuse treatment and violated her probation.

The record supports the conclusion that the facts alleged, if supported by credible evidence, would not sustain a favorable decision on the petition. (*Zachary G.*, *supra*, 77 Cal.App.4th at p. 806.) While D.A. appeared to be making an effort to improve her circumstances, the allegations of her petition did not show that her circumstances were changed. In addition, the petition did not state a prima facie case to show that delaying permanency to allow further opportunity for family reunification was in B.A.'s best

6

interests. In view of D.A.'s history and current circumstances, family reunification was unlikely. B.A. was thriving in the home of her caregiver, who was willing and able to provide a safe, stable, permanent home to her. The court did not err when it denied a hearing on the merits of D.A.'s petition.

## DISPOSITION

The orders denying a hearing on the merits of the petition and terminating parental rights are affirmed.


NARES, J.

WE CONCUR:


BENKE, Acting P. J.


HUFFMAN, J.

7